**ORAL ARGUMENT NOT YET SCHEDULED**
Case Nos. 25-1255 and 25-1268 (consolidated)

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

READING INTERNATIONAL, INC., Petitioner,

v.

SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA, Respondents, and

CITY OF PHILADELPHIA, Intervenor.

ERIC S. STROHMEYER, Petitioner,

v.

SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA, Respondents, and

CITY OF PHILADELPHIA, Intervenor.

ON PETITIONS FOR REVIEW OF AN ORDER OF
THE SURFACE TRANSPORTATION BOARD

# BRIEF FOR INTERVENOR IN RESPONSE TO PETITIONER STROHMEYER


Charles A. Spitulnik
KAPLAN KIRSCH LLP
1634 I Street, NW, Suite 300
Washington, DC 20006
(202) 955-5600
cspitulnik@kaplankirsch.com

Grant M. Glovin
KAPLAN KIRSCH LLP
1500 Broadway, Suite 1605
New York, NY 10036
(646) 883-5110
gglovin@kaplankirsch.com

*Counsel for City of Philadelphia*

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

The parties in these consolidated cases are Petitioner Reading International, Inc., Petitioner Eric S. Strohmeyer, Respondent Surface Transportation Board, Respondent the United States of America, and Intervenor the City of Philadelphia.

The ruling under review is a decision of the Surface Transportation Board in docket number FD 36768 served on September 24, 2025.

These consolidated cases have not previously been before this or any other court. There are no related cases as defined in D.C. Cir. R. 28(a)(1)(C).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................iv

GLOSSARY.................... viii

JURISDICTIONAL STATEMENT....................1

STATUTES AND REGULATIONS....................1

ISSUES FOR REVIEW....................2

INTRODUCTION....................2

STATEMENT OF THE CASE....................3

SUMMARY OF THE ARGUMENT....................5

ARGUMENT....................7

I. THE DISPUTE OVER THE BOARD'S JURISDICTION IS NOT PROPERLY BEFORE THIS COURT....................7

A. Strohmeyer Lacks Standing....................8

1. Strohmeyer Has a Generalized Grievance, Not a Concrete, Particularized Injury....................8

2. Strohmeyer's Purported Injuries Are Not Traceable to the Board's Decision....................11

a. Strohmeyer's Inability to Railbank the Line Is Traceable to Railbanking Procedures, not the Board's Decision....................12

b. Strohmeyer Cannot Otherwise Preserve the Corridor for Potential Future Rail Use Due to the Line's Deterioration, not the Board's Decision....................13

3. Strohmeyer's Statements to the Board Confirmed He Had No Stake in the Proceeding....................14

4. Strohmeyer Cannot Establish Standing Based on a Procedural Injury. ....... 15

B. This Court Lacks Jurisdiction Under the Hobbs Act. ....... 16

C. Reading Forfeited Any Challenge to the Board's Jurisdiction ....... 17

II. THE BOARD HAD JURISDICTION OVER THE DISPUTE. ....... 19

A. The Board Did Not Need to Interpret the Deed or Final System Plan. ....... 19

B. Strohmeyer's Arguments in Response are Wrong ....... 23

III. STROHMEYER'S PROCEDURAL CHALLENGES ARE MERITLESS ....... 28

CONCLUSION ....... 28

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) ....... 29

## TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**


*BNSF Ry. v. STB*,
453 F.3d 473 (D.C. Cir. 2006)....................18

*Carroll College, Inc. v. NLRB*,
558 F.3d 568 (D.C. Cir. 2009)....................18

*City of New York v. Amtrak*,
776 F.3d 11 (D.C. Cir. 2015)....................26, 27

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)....................11

*Commuter Rail Div. of the Reg'l Transp. Auth. v. STB*, 608 F.3d 24
(D.C. Cir. 2010)....................13

*Consol. Rail Corp. v. Penn Cent. Corp.*,
533 F. Supp. 1351 (Reg'l Rail Reorg. Ct. 1982)....................20, 24

*Consol. Rail Corp. v. Pittsburgh & Lake Erie R.R.*,
459 F. Supp. 1013 (Reg'l Rail Reorg. Ct. 1978)....................26, 27

*Consol. Rail Corp. v. STB*,
571 F.3d 13 (D.C. Cir. 2009)....................20, 26

*Consol. Rail Corp. v. United States*, 883 F. Supp. 1565 (Reg'l Rail
Reorg. Ct. 1995)....................24, 25, 26, 27

*Fore River Residents Against the Compressor Station v. FERC*,
77 F.4th 882 (D.C. Cir. 2023)....................17

*Gentiva Health Servs. v. Becerra*,
31 F.4th 766 (D.C. Cir. 2022)....................19

*Kalb v. Feuerstein*,
308 U.S. 433 (1940)....................18

*Lowe v. STB*,
540 F. App'x 6 (D.C. Cir. 2013)....................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................8, 9

*Matson Navigation Co. v. U.S. DOT*,
77 F.4th 1151 (D.C. Cir. 2023)....................16

*Mitchell v. Christopher*,
996 F.2d 375 (D.C. Cir. 1993)....................17, 18

*NRC v. Texas*,
605 U.S. 665 (2025)....................17

*Penn Cent. Corp. v. United States*,
814 F. Supp. 1116 (Reg'l Rail Reorg. Ct. 1993)....................24

*Plaquemines Port, Harbor & Terminal District v. FMC*, 838 F.2d 536
(D.C. Cir. 1988)....................18, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................10, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................10

*United States v. Richardson*,
418 U.S. 166 (1974)....................9

*Water Transp. Ass'n v. Interstate Commerce Comm'n*,
819 F.2d 1189 (D.C. Cir. 1987)....................17

**Agency Decisions**

*Chelsea Prop. Owners—Aban.—Portion of the Consol Rail Corp.'s W. 30th St. Secondary Track in N.Y.C., N.Y.*,
AB 167 (Sub-No. 1904)A (STB served June 13, 2005)....................11

*Snohomish Cnty.—Adverse Abandonment—GNP RLY, Inc., in Snohomish Cnty., Wash.*,
AB 1331, slip op. at 8 (STB served May 23, 2023)....................12

*Snohomish Cnty.—Adverse Abandonment—GNP RLY, Inc., in Snohomish Cnty., Wash.*, AB 1331, slip op. at 8 (STB served July 11, 2024) .......... 12

**Statutes**

5 U.S.C. § 706(2) .......... 19

16 U.S.C. § 1247(d) .......... 8, 10

28 U.S.C. § 2321(a) .......... 16

28 U.S.C. § 2342(5) .......... 16

28 U.S.C. § 2344 .......... 16

45 U.S.C. § 719(b) .......... 3

45 U.S.C. § 719(e)(2) .......... 19, 20, 24, 26

45 U.S.C. § 743(b)(2) .......... 26

49 U.S.C. § 10101(4) .......... 9

49 U.S.C. § 10501(b) .......... 3

49 U.S.C. § 10901 .......... 22

49 U.S.C. § 10903 .......... 22

**Regulations**

49 C.F.R. § 1101.2(d) .......... 5

49 C.F.R. § 1104.13(a) .......... 9

49 C.F.R. § 1152.29 .......... 10

**Other Authorities**

*Office of Public Assistance, Governmental Affairs, and Compliance*, Surface Transp. Bd., https://www.stb.gov/about-stb/offices/opagac/ (last visited Sep. 3, 2026) .......... 15

## GLOSSARY

| | |
|---|---|
| 3R Act | Regional Rail Reorganization Act of 1973, Pub. L. No. 93-236, 87 Stat. 985 (codified as amended at 45 U.S.C. §§ 701–793) |
| Board | Surface Transportation Board |
| City | City of Philadelphia |
| Conrail | Consolidated Rail Corporation |
| Line | The Ninth Street Branch |
| Reading | Reading International, Inc. |
| SEPTA | Southeastern Pennsylvania Transportation Authority |
| Special Court | The Special Court identified in 45 U.S.C. § 719(b), today the United States District Court for the District of Columbia |
| Termination Act | Interstate Commerce Commission Termination Act, Pub. L. No. 104-88, 109 Stat. 183 (1995) (codified as amended at 49 U.S.C., subtit. IV) |
| Trails Act | National Trails System Act, 16 U.S.C. § 1247(d) |

## JURISDICTIONAL STATEMENT

The City adopts Respondents' jurisdictional statement.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are contained in the Addenda submitted with Reading International's Reply Brief and the Respondents' Joint Brief in Response to Petitioner Strohmeyer's Brief.

## ISSUES FOR REVIEW

1. Whether this Court has jurisdiction over Eric Strohmeyer's petition for review of a Surface Transportation Board order when Strohmeyer had no connection to the subject rail line and was not a party to the Board proceeding.

2. Whether the Board had jurisdiction over this matter, given that there was no dispute concerning the Final System Plan or a conveyance order issued pursuant to it.

## INTRODUCTION

Eric Strohmeyer seeks to have a decision of the Surface Transportation Board (the "Board") vacated, but his practical interest in this proceeding is unclear. Strohmeyer has no connection to the Ninth Street Branch (the "Line") in the City of Philadelphia (the "City") beyond a general appreciation for rail service. His plans for the Line consist of vague, infeasible speculation. He has suggested that he hopes that the City ultimately obtains the same result it received from the Board from a different forum. Strohmeyer lacks standing under Article III.

And on the merits, Strohmeyer misunderstands both this dispute and key authorities he cites. Before the Board, Reading International, Inc. ("Reading") and the City disputed whether the Board had jurisdiction over Reading's interest in real property underlying the Line. They did not dispute what interests Reading or its predecessor, the Reading Company, possessed at any given time. The determination

of the Board's jurisdiction was within the heartland of the Board's authority. The United States District Court for the District of Columbia, in its role as successor to the Special Court established under 45 U.S.C. § 719(b), has no role in this case.[1]

## STATEMENT OF THE CASE

The City adopts its Statement of the Case from its Brief in response to Petitioner Reading, supplemented as follows.

This case concerns the contemporary jurisdictional status of the Line. The dispute before the Board was whether an action to condemn the Line is preempted by the Interstate Commerce Commission Termination Act (the "Termination Act"), 49 U.S.C. § 10501(b). The City petitioned for a declaratory order stating that the Termination Act did not preempt such an action because the Line was no longer subject to the Board's jurisdiction. J.A. 0003. Reading argued that the Line was never fully abandoned because "Reading retained its property interests in the Viaduct" that carried the Line. J.A. 0074, 0077.

In their filings, the parties noted that, pursuant to the Final System Plan, the railroad rights in the relevant portion of the Line were transferred to the Consolidated Rail Corporation ("Conrail"). J.A. 0004, 0070. However, the Board did not need to

[1] The United States District Court for the District of Columbia assumed the jurisdiction of the Special Court in 1997. *See* 45 U.S.C. § 719(b)(2). For simplicity, the City refers to the District Court as the Special Court insofar as the District Court exercises the functions of the Special Court.

consult or interpret the deed that transferred those rights to Conrail (the "Deed"). Reading and the City both confirmed to the Board that Conrail received operating rights over the line from the Reading Company, which retained an ownership interest in the line, and that Conrail consummated abandonment of its operating rights. J.A. 0034, 0072.[2]

Nevertheless, Eric Strohmeyer, an individual with no apparent connection to the proceeding, filed an untimely putative reply to and motion to dismiss the City's original petition. Strohmeyer argued that the Board lacked jurisdiction over the dispute, and suggested that one Board member should recuse herself from the proceeding. J.A. 0208–0244.

The City filed a motion to strike Strohmeyer's filing based on his lack of interest in the proceeding, and, in the alternative, a reply to Strohmeyer's motion to dismiss. J.A. 0245–0259. Reading filed a reply to the City's motion to strike, in which it did not comment at all on Strohmeyer's arguments. J.A. 0260–0268. Reading did not indicate that it found the jurisdictional questions significant before the Board or in its opening brief here.

[2] The City attempted to submit a filing to the Board that included the Deed as an exhibit. J.A. 0115–0186. On Reading's motion, that filing was struck from the record. J.A. 0275.

In its decision granting the City's petition for a declaratory order, the Board, on the City's motion, struck Strohmeyer's filing, noting that "intervention is discretionary, and Strohmeyer has not demonstrated an interest that would warrant the Board permitting his participation as a party over the City's objection." J.A. 0276 (internal citation omitted).[3] Nonetheless, to "confirm[]" its jurisdiction, the Board considered Strohmeyer's jurisdictional arguments and rejected them. J.A. 0277. The Board explained that the Special Court has jurisdiction over the interpretation of the Final System Plan, conveyance orders, and conveyance documents like the Deed, but the dispute before the Board did not require any such interpretation. J.A. 0277.

## SUMMARY OF THE ARGUMENT

Strohmeyer's Petition for Review must be dismissed. Strohmeyer lacks Article III standing because he has not suffered an injury in fact and his purported injuries are not traceable to the Board's action.

Strohmeyer has no connection to the Line as a rail carrier, shipper, or other stakeholder. His only claimed injury is based on the loss of the opportunity to preserve the corridor for future rail service, but he never expresses a particularized interest in restoring service or explains why he wants rail service to resume on the

[3] 49 C.F.R. § 1101.2(d) defines "party" as "a complainant, defendant, applicant, respondent, protestant, intervener, or petitioner in any proceeding, or other persons permitted or directed by the Board to participate in a proceeding."

Line in the distant future. Instead, Strohmeyer describes *how* he seeks to preserve the corridor—not *why*.

Additionally, Strohmeyer's injuries are not traceable to the Board decision. To preserve the corridor for future rail service in the manner he proposes, he would need Reading to be willing to abandon the Line and negotiate an agreement with him. Nothing suggests that Reading would be so willing. And even if Strohmeyer somehow managed to secure such an agreement, he would still be stymied. Legally, Strohmeyer is statutorily ineligible to invoke his proposed procedure for the Line. Practically, the Line is no longer suitable for rail use. It is dilapidated and disconnected from the national rail network and any potential customers. The resumption of rail service is impossible.

Strohmeyer therefore lacks standing under Article III. And, for that reason and because the Board denied him party status, he is not a party aggrieved under the Hobbs Act. This Court lacks jurisdiction over Strohmeyer's petition. Given that Reading forfeited any challenge to the Board's jurisdiction by raising it for the first time in its Reply Brief, this Court should not address those arguments.

That said, Strohmeyer's arguments regarding the Board's jurisdiction require ignoring statutory text and misreading precedent. The Special Court's exclusive jurisdiction is tied to the interpretation of conveyance orders issued pursuant to the Final System Plan. Here, no interpretation of the Deed was required because the

parties agreed on its meaning. The parties' dispute concerned the Board's jurisdiction over Reading's interest in the Line, not who held what rights.

In response, Strohmeyer overreads precedent and misunderstands principles of litigation. First, Strohmeyer seizes on language suggesting the Special Court has a major role in statutory interpretation, but he ignores that the Special Court interprets statutes in service of its central function of interpreting, implementing, or modifying conveyance orders. Second, Strohmeyer insists that any case in which Reading's retained interest is a material fact requires interpreting the Deed. But that argument is overbroad, and it ignores the Special Court's own words of caution about its jurisdiction.

The City adopts Respondents' arguments regarding Strohmeyer's scattershot procedural challenges.

## ARGUMENT

### I. THE DISPUTE OVER THE BOARD'S JURISDICTION IS NOT PROPERLY BEFORE THIS COURT.

Strohmeyer lacks standing, so this Court lacks Article III jurisdiction over his petition for review. Additionally, this Court lacks jurisdiction under the Hobbs Act because Strohmeyer is not a party aggrieved by the Board's ruling. Given that Reading forfeited any challenge to the Board's jurisdiction, arguments concerning the Board's jurisdiction are not properly before this Court.

### A. Strohmeyer Lacks Standing.

This Court considers cases and controversies. To invoke this Court's jurisdiction, a party must have suffered an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action rather than "the result [of] the independent action of some third party"; and redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (internal quotation marks omitted) (alteration in original).

Strohmeyer's injury is not concrete, not particularized, and not traceable to the Board's decision. As Strohmeyer has made clear, his interest in this dispute is academic.

#### 1. Strohmeyer Has a Generalized Grievance, Not a Concrete, Particularized Injury.

Strohmeyer's claim to standing is premised on national policy interests. Strohmeyer says he has an "interest" in "the preservation of the rail corridor for potential future rail use and its continued inclusion within the national rail network." Strohmeyer Addendum ("ADD") 3. Strohmeyer specifically claims that he intends to seek a Notice of Interim Trail Use under the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d), thereby "railbanking" the Line to preserve the Line for potential future rail service. ADD 3; Strohmeyer Br. 14.

An interest in preserving rail corridors for railroad use is a common interest shared by the United States as a whole. Congress has said as much. See 49 U.S.C.

§ 10101(4) (declaring it the policy of the United States Government "to ensure the development and continuation of a sound rail transportation system . . . to meet the needs of the public and the national defense").

An interest that is embodied in national policy is "plainly undifferentiated and common to all members of the public," *United States v. Richardson*, 418 U.S. 166, 177 (1974) (internal quotation marks omitted), and an injury to it cannot give rise to standing. To hold otherwise would give any litigant standing to enforce national rail transportation policy. Just as *Lujan* rejected the notion that "anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection," 504 U.S. at 567, a railroader needs a specific connection to a rail line to have standing to challenge actions relating to it, not merely a connection to the national rail system as a whole.

Nor does Strohmeyer have the type of interest in the Line that may give rise to a particularized injury. Strohmeyer is not seeking to ship or receive goods as a shipper or rail carrier, for he is neither.

Strohmeyer's claimed intent to railbank the line does not change the analysis. The deprivation of an opportunity to use a statutory procedure is not itself sufficient to confer Article III standing if that deprivation did not cause a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Rather, "Article III standing

requires a concrete injury even in the context of a statutory violation," particularly where that purported violation is the alleged "[d]eprivation of a procedural right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Strohmeyer must identify a concrete injury he suffered by being deprived of the opportunity to railbank the Line, and he has not.

To the contrary, Strohmeyer's claimed intent to railbank the line underscores his lack of injury. Railbanking allows a "trail sponsor," who must be a state, local government, or qualified private organization, to establish a recreational trail on a disused rail line while keeping alive the possibility of future rail service on the line. 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(c)(2), (d)(2). When a line is railbanked and a trail is created, trail users benefit (along with those organizations who represent their interests). But Strohmeyer has not represented that he would use a trail. And if he wanted a trail established, he could let the City carry out its plans to convert part of the Line into a park.[4]

Railbanking may also benefit shippers and rail carriers, but, again, Strohmeyer is neither. He has nothing to gain from railbanking except preserving the Line for "future rail use," ADD 3, which, as discussed, cannot give rise to standing without a

---

[4] A similar linear park—New York City's High Line—was created through railbanking. *See Chelsea Prop. Owners—Aban.—Portion of the Consol Rail Corp.'s W. 30th St. Secondary Track in N.Y.C., N.Y.*, AB 167 (Sub-No. 1094)A (STB served June 13, 2005).

more particularized harm. Without that, Strohmeyer has not suffered an injury in fact.

### 2. Strohmeyer's Purported Injuries Are Not Traceable to the Board's Decision.

Where a party's standing theory relies on "mere speculation" concerning a link in a "chain of contingencies," the alleged injury is not fairly traceable to the challenged action. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013). That rule is independently fatal to Strohmeyer's claim to standing. Strohmeyer's submissions omit important details about the Line and railbanking that make clear that any efforts he made to preserve rail service on the Line would fail, if he ever were to make such efforts (the City is not aware of any efforts he has made to date).

#### a. Strohmeyer's Inability to Railbank the Line Is Traceable to Railbanking Procedures, not the Board's Decision.

Railbanking depends on cooperation from the rail carrier, which must initiate an abandonment proceeding for the line. Reading has shown that it is not interested in abandoning the Line. If Reading had wanted to, it could have achieved the same result more quickly and with less legal risk by not opposing the City's Petition for a Declaratory Order.[5] And if Reading acquires rights over the Line subject to the

[5] As discussed in the City's Brief in Response to Reading, Reading's claims to rail carrier status would imply it has failed to meet its common carrier obligations over the past several decades.

Board's jurisdiction and does not abandon them, Strohmeyer cannot railbank the Line.[6]

Even if Reading decided to abandon the Line, it would then have to agree to negotiate with Strohmeyer for trail use. But Reading would have no reason to do so. Reading is not a rail carrier, and does not presently provide rail service. It would have no reason to risk the Line being reactivated years or decades in the future when it is in no position to provide rail service.

And there is another insurmountable hurdle: Strohmeyer cannot serve as a trail sponsor. First, he is not "a State, political subdivision, or qualified private organization," and has not identified any such organization that could serve in his stead. 16 U.S.C. § 1247(d). Second, he would need to assume substantial liability for the Line, and there is no evidence that he is prepared to do so. 49 C.F.R. § 1152.29(a)(2). The fact that Strohmeyer cannot railbank the Line is traceable to the Trails Act, not the Board's decision.

---

[6] The City could seek to adversely abandon the Line, but Strohmeyer would still face a series of unlikely contingencies, because whether the Trails Act is applicable to adverse abandonment cases is an unresolved question. *Snohomish Cnty.—Adverse Abandonment—GNP RLY, Inc., in Snohomish Cnty., Wash.*, AB 1331, slip op. at 8 (STB served May 23, 2023). Prior cases have relied on the agreement of the rail carrier, applicant, and trail sponsor. *See, e.g.*, *id.*; *Snohomish Cnty.—Adverse Abandonment—GNP RLY, Inc., in Snohomish Cnty., Wash.*, AB 1331, slip op. at 8 (STB served July 11, 2024). The City is not aware of a case in which the Board has granted a Notice of Interim Trail Use or Certificate of Interim Trail Use where one of those parties did not agree. So, in an adverse abandonment scenario, Strohmeyer may need to reach an agreement with Reading *and* the City.

### b. Strohmeyer Cannot Otherwise Preserve the Corridor for Potential Future Rail Use Due to the Line's Deterioration, not the Board's Decision.

Strohmeyer states that his ultimate interest is in preserving the Line for potential future rail use, but that train has left the station. As the City has explained, the Line is now unsuited for rail use following decades of changes to the Line's infrastructure and surroundings. At one end of the Line lie the Pennsylvania Convention Center and the Rail Park, both of which have disconnected the Viaduct from the rail network to its south, making any connection to any rail lines or stations—and, accordingly, rail service—impossible. J.A. 0005.

Moreover, the Line is blighted and overgrown, without the tracks or other infrastructure necessary to support rail service. J.A. 0005. Reintroducing rail service would likely cost tens of millions of dollars. And there is no apparent reason to make that investment, as Strohmeyer has not claimed there are any shippers on the Line.

Strohmeyer long ago lost the chance to preserve the Line "for potential future rail use," ADD 3. Accordingly, the alleged deprivation of that opportunity is not traceable to the Board's decision. *See Commuter Rail Div. of the Reg'l Transp. Auth. v. STB*, 608 F.3d 24, 30 (D.C. Cir. 2010).

### 3. Strohmeyer's Statements to the Board Confirmed He Had No Stake in the Proceeding.

While Strohmeyer's claim to standing is inadequate on its face, its problems are magnified by the ways in which it departs from positions he took before the Board.

First, Strohmeyer opined on the merits of the real dispute before the Board and sided with the City. Strohmeyer stated that, if a court agreed with Reading's position, "[s]uch a decision would have had far reaching consequences that quite literally would have opened a modern-day legal equivalent of the mythical Pandora's Box." J.A. 0238. Strohmeyer warned of "[t]he fall-out from such a bad decision." J.A. 0239. Whatever Strohmeyer's opinion of the Board's jurisdiction, he very much hoped that the City would ultimately prevail, albeit in a different forum. Now, Strohmeyer has changed tack, suggesting his interest in this case is purely academic.

Second, Strohmeyer consistently failed to identify his interest in the case to the Board. Strohmeyer provided the Board with a list of every entity he thought should be provided with notice of this proceeding, including two federal agencies, Conrail, and the Southeastern Pennsylvania Transportation Authority ("SEPTA"), notwithstanding that Conrail and SEPTA no longer have any interest in the Line. J.A. 0242. Despite the breadth of the list of possible stakeholders, the list did not

include Strohmeyer himself.[7] That omission makes plain what Strohmeyer has now tried to obscure: he has not suffered a concrete, particularized injury. His about-face before this Court is not credible.

**4. Strohmeyer Cannot Establish Standing Based on a Procedural Injury.**

Even if Strohmeyer's submissions could be read to suggest that he suffered a procedural injury, they would not clear Article III's bar. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers*, 555 U.S. at 496. Strohmeyer, for the reasons discussed, has no such concrete interest.

Moreover, Strohmeyer did not actually suffer a procedural injury. Strohmeyer submitted a lengthy, developed motion, and the Board considered his arguments and responded to them. Strohmeyer claims that he "was denied a meaningful opportunity to present arguments," Strohmeyer Br. 15, but it is unclear how much

[7] The City noted this omission to the Board. J.A. 0248. Strohmeyer did not respond. Strohmeyer suggests that it was unclear whether he was permitted to respond to the City because the City submitted a reply in the alternative to its motion to dismiss. Strohmeyer Br. 49–50. But Strohmeyer elsewhere suggests that he would have expected the Board to accept replies to replies, let alone replies to motions. Strohmeyer Br. 47–48. Moreover, the Board maintains an office "to provide information and informal guidance as to the STB's procedures, regulations, and actions," that Strohmeyer could have consulted if he was confused about his procedural rights. *Office of Public Assistance, Governmental Affairs, and Compliance*, Surface Transp. Bd., https://www.stb.gov/about-stb/offices/opagac/ (last visited Sep. 3, 2026).

more "meaningful" his opportunity could have been. Had the Board not struck Strohmeyer's filing, or had it followed Strohmeyer's proposed procedures, its ultimate decision would have been identical. Strohmeyer was heard.

Accordingly, Strohmeyer does not have standing under Article III, and his petition for review must be dismissed.

### B. This Court Lacks Jurisdiction Under the Hobbs Act.

This Court lacks jurisdiction under the Hobbs Act, 28 U.S.C. § 2344, because Strohmeyer is not a "party aggrieved."[8] To so qualify, a petitioner must have Article III standing and have been "a party to the underlying agency proceedings." *Matson Navigation Co. v. U.S. DOT*, 77 F.4th 1151, 1157 (D.C. Cir. 2023) (internal quotation marks and alterations omitted).

Strohmeyer fails both tests. In addition to not having standing, he was not a party before the Board because, "[w]hen intervention in agency adjudication or rulemaking is prerequisite to participation therein, standing to seek judicial review of the outcome will be denied to those who did not seek—or who sought but were denied—leave to intervene." *Water Transp. Ass'n v. Interstate Commerce Comm'n*, 819 F.2d 1189, 1192 (D.C. Cir. 1987).

---

[8] The Hobbs Act applies to Strohmeyer's petition for review. 28 U.S.C. §§ 2321(a), 2342(5).

Strohmeyer did not seek leave to intervene in the proceeding, despite the Board's longstanding practice that intervention is discretionary. J.A. 0276. To the extent his motion to dismiss could be construed as seeking permission to intervene, the Board denied him leave, thereby denying him party status.[9] J.A. 0276. Nor does the fact that Strohmeyer filed comments to which the Board responded confer party status. *Cf. NRC v. Texas*, 605 U.S. 665, 677 (2025). Accordingly, Strohmeyer was not a party to the Board proceeding, and is not now a party aggrieved.

### C. Reading Forfeited Any Challenge to the Board's Jurisdiction.

Reading never challenged the Board's jurisdiction until filing its Reply Brief to this Court, despite having opportunities to respond to both Strohmeyer's motion to dismiss the case and the City's motion to strike. *See* 49 C.F.R. § 1104.13(a). Reading therefore forfeited those arguments. *Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023) ("Arguments raised for the first time in a reply brief are forfeited."); *Mitchell v. Christopher*, 996 F.2d 375, 378 (D.C. Cir. 1993) ("[O]bjections to agency decisions must be raised before the agency . . . .").

---

[9] Nor could Strohmeyer have petitioned for review of the Board's (correct) decision not to grant him party status, *see Water Transp. Ass'n*, 819 F.2d at 1192 n.28, because he had no Article III standing or concrete interest to tie to that procedural injury, *Summers*, 555 U.S. at 496.

Nor does it matter that the arguments concerned the Board's jurisdiction. A party may forfeit ordinary challenges to an agency's jurisdiction, including the Board's. *See, e.g.*, *BNSF Ry. v. STB*, 453 F.3d 473, 479 (D.C. Cir. 2006); *Mitchell*, 996 F.2d at 378. Indeed, this Court has held as much with respect to the particular statute at issue in this case in an unpublished decision. *Lowe v. STB*, 540 F. App'x 6, 6 (D.C. Cir. 2013).

Reading's contrary arguments are inapposite. Reading suggests that the general rule regarding challenges to agency jurisdiction does not apply because this case concerns whether this matter is within the exclusive jurisdiction of the Special Court. Reply Br. 8. But Reading is challenging a Board decision, not a Special Court order. Procedural rules regarding challenges to agency jurisdiction apply.

Nor are the cases that Reading cites analogous to this case. *Kalb v. Feuerstein*, 308 U.S. 433 (1940), concerned the distinct question of state-court jurisdiction. *Carroll College, Inc. v. NLRB*, 558 F.3d 568 (D.C. Cir. 2009), concerned an issue "patently beyond [an agency's] jurisdiction," *id.* at 574 (internal quotation marks omitted), where the defect was "immediately" clear based on objective criteria and a bright line rule. By contrast, the Board's jurisdiction turns on a statute whose plain text favors the City's argument. *See infra* § II.A. Finally, *Plaquemines Port, Harbor & Terminal District v. FMC*, 838 F.2d 536 (D.C. Cir. 1988), allowed the Department of Justice to argue that the Federal Maritime Commission's order suffered from a

jurisdictional defect, but the Department of Justice had a unique institutional role as a statutory respondent, and there is no indication that it (or the other litigants in these cases) failed to raise the issue in its opening brief.

The Court therefore should dismiss Strohmeyer's petition for review, and consider the merits of Reading's petition (and deny it) without addressing the Board's jurisdiction.

## II. THE BOARD HAD JURISDICTION OVER THE DISPUTE.

The Board correctly interpreted 45 U.S.C. § 719(e)(2).

Under the Administrative Procedure Act, this Court may not "set aside agency action, findings, and conclusions" unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### A. The Board Did Not Need to Interpret the Deed or Final System Plan.

"In addressing a question of statutory interpretation, [a court must] begin with the text." *Gentiva Health Servs. v. Becerra*, 31 F.4th 766, 775 (D.C. Cir. 2022) (internal quotation marks omitted). The text of 45 U.S.C. § 719(e)(2) is controlling and clear.

The Special Court has exclusive jurisdiction, as relevant here, over "any action . . . to interpret . . . any of the orders entered by such court pursuant to section 743(b) of [title 45]." 45 U.S.C. § 719(e)(2). The key word in this statute is "orders." The Special Court's jurisdiction under this provision must always be tied to one of

its orders. The Special Court has interpreted the term "orders" to include conveyance documents like the Deed. *Consol. Rail Corp. v. Penn Cent. Corp.*, 533 F. Supp. 1351, 1353–54 (Reg'l Rail Reorg. Ct. 1982).

Statutes are not "orders" of a court; they are acts of Congress. Accordingly, Section 719(e) does not give the Special Court jurisdiction to interpret or apply the Termination Act, or any statute at all. Without an "order" to interpret, the Special Court is without jurisdiction under Section 719(e). So, most proceedings involving rail lines in the Final System Plan can be handled by the Board, because "[o]nly in proceedings in which the Board's authority is challenged and an interpretation of the [Final System Plan] or the Special Court's conveyance order under 45 U.S.C. § 719(e)(2) is required does the Board lack jurisdiction." *Consol. Rail Corp. v. STB*, 571 F.3d 13, 20 (D.C. Cir. 2009).

That simple rule resolves this case. Reading and the City had no dispute regarding the interpretation of the Final System Plan or the Deed, and instead only disputed whether the Board retained jurisdiction over Reading's remaining interest in the Line.

The City provided the Board with a lengthy list of premises that neither it nor Reading contested:

- The Reading Company conveyed certain interests in the Viaduct to Conrail in [the Deed, which was] executed

pursuant to the Final System Plan, and . . . the Reading Company retained an ownership interest in the Viaduct, which Reading now owns.

- Conrail abandoned its interests through a proceeding under the [Regional Rail Reorganization Act of 1973, Pub. L. No. 93-236, 87 Stat. 985 (codified as amended at 45 U.S.C. §§ 701–793) (the "3R Act")]. . . .
- Today, Reading owns the Viaduct and Conrail has no remaining interest in it.
- There is no railroad service on the Viaduct and the tracks have been removed.
- "[T]he Final System Plan did not convey the entirety of the Viaduct property to Conrail" and "Reading retained its property interests in the Viaduct. Conrail only took over operations of the freight services." [J.A. 0077].
- Reading retained "pre-existing interests," "pre-existing property interests," "ownership interests," "property interests," and "fee interests" in the Viaduct. (These are all of the ways that Reading characterizes its interests in

the Viaduct in its Reply, and the City agrees with each.)

[J.A. 0072, 0073, 0074, 0077, 0079.]

J.A. 0250–0251 (footnote omitted). Reading replied to the City's motion and disputed *none* of these premises. *See* J.A. 0261–0266.[10] The Board could take as undisputed sufficient facts to avoid the need to interpret the Deed or the Final System Plan.[11] Those documents were mere background.

Rather, what the Board had to resolve was the application of the Termination Act to Reading's "property interest." The City argued principally that "owners of real property interests that rail lines cross do not need to abandon their interests for the Board's jurisdiction to terminate, because real property interests, standing alone, are not subject to the Board's jurisdiction." J.A. 0254. That argument was based on the Termination Act and Reading's status as a non-carrier. J.A. 0251–0252. Reading, meanwhile, based its arguments on the Termination Act (49 U.S.C. §§ 10901, 10903), administrative and judicial decisions interpreting those sections, and

[10] Reading contends that a declaration it submitted characterized Reading's interests differently. Reply Br. 6. It did not. The declaration, too, referred to Reading's "pre-existing property interests," "fee interests," "retention of property interests," and "retained parcels." J.A. 0090–0094.

[11] Reading suggests that "the primary dispute is what interests Reading retained, what it conveyed to Conrail, and what Conrail abandoned," Reply Br. 5, ignoring that the City conceded to Reading's characterizations of its interests. If Reading correctly characterizes "the primary dispute," then Reading would have prevailed before the Board.

the Trails Act. J.A. 0074–0078, 0081–0085.[12] Again, no party contested the meaning of any part of the Final System Plan or the Deed. So, the Special Court was without jurisdiction.

### B. Strohmeyer's Arguments in Response are Wrong.

The conclusion that the Special Court did not have jurisdiction over this dispute because it did not require interpreting the Final System Plan is straightforward. Strohmeyer's efforts to resist that conclusion misread precedent and ignore the statutory text.

In one set of arguments, Strohmeyer proves too much, by arguing that the City and Reading could not agree on the meaning of the Deed, and that applying the Termination Act to Reading's interests necessarily required interpreting the Deed. Strohmeyer Br. 28. But it is typical for parties to present narrow disputes to courts and administrative tribunals and not to contest certain background premises. In this proceeding, for example, no party has contested that the Board was validly constituted despite Congress having conferred for-cause protection from removal on its members, or argued that Congress unconstitutionally delegated power to the Board. This Court's resolution of the dispute before it does not require it to "necessarily assume[] a prior legal determination" regarding those issues, as Strohmeyer imagines. Strohmeyer Br. 28. Put another way, if the meaning of the

[12] The remainder of Reading's arguments concerned res judicata. J.A. 0078–0081.

Deed *were* contested and that dispute was resolved by the Special Court, and the parties agreed on the impact of the Special Court's decision, the Board would then be free to rely on the decision to decide the matter before it without having to reinterpret the Deed.

Strohmeyer makes a related misstep by arguing that the Board's application of the Termination Act to Reading's ownership interest in the Line meant that the Board was required to "interpret the conveyance framework," and that that role was one for the Special Court. Strohmeyer Br. 21. The interpretation of a statutory framework does not require interpreting an order developed under it. Moreover, Strohmeyer misstates the Special Court's grant of jurisdiction. Again, 45 U.S.C. § 719(e)(2) grants the Special Court exclusive jurisdiction over the interpretation of its "orders," and a statutory framework is not a court order.

Finally, and most significantly, Strohmeyer mischaracterizes the Special Court's role in interpreting statutes. The Special Court has jurisdiction over disputes regarding the relationship between the 3R Act and other statutes where "the dispute requires an interpretation of the conveyance order as well as the attending documents," *Penn Cent. Corp. v. United States*, 814 F. Supp. 1116, 1119–20 (Reg'l Rail Reorg. Ct. 1993). But "not every claim 'relating to the [3R] Act' is within [the Special Court's] exclusive jurisdiction." *Consol. Rail Corp. v. United States*, 883 F. Supp. 1565, 1571 (Reg'l Rail Reorg. Ct. 1995) (quoting *Penn Cent. Corp.*, 533 F.

Supp. at 1353). The Special Court will interpret statutes in service of interpreting "orders," but not otherwise. In this case, the Board had to interpret the Termination Act and not the Deed, so the Board, and not the Special Court, had jurisdiction over the dispute.

*Consolidated Rail Corporation v. United States* ("*Conrail*"), on which Strohmeyer relies, is consistent with that rule. In *Conrail*, the Special Court asserted jurisdiction over claims in which Conrail relied on conveyance documents and the interpretation of those documents controlled the outcome of the case. *See* 883 F. Supp. at 1576–77. Interpreting those conveyance documents required interpreting the relationship between the 3R Act and a statute relating to hazardous waste, and so the Special Court noted that "the interpretation of . . . the statutes creating the [Final System Plan] . . . is within [the Special Court's] jurisdiction." *Id.* at 1571. That statement was limited to its context—the Special Court had a case involving the interpretation of conveyance documents, and it interpreted statutes in service of that central function.

The Special Court did not seek to extend its jurisdiction to every claim interpreting the 3R Act, let alone claims that depended on other statutes. Rather, the Special Court found it did not have jurisdiction over an ancillary issue that, though tied closely to the issues within its jurisdiction, ultimately depended on the hazardous waste statute, and not on a conveyance document. *Id.* at 1578. And the

Special Court warned that expanding its jurisdiction too far afield to other ancillary matters would "run counter to the desire of the Conference Committee to confine us to our 'central functions.'" *Consol. Rail Corp. v. United States*, 883 F. Supp. 1565, 1573 (Reg'l Rail Reorg. Ct. 1995) (quoting *Consol. Rail Corp. v. Pittsburgh & Lake Erie R.R.*, 459 F. Supp. 1013, 1017 (Reg'l Rail Reorg. Ct. 1978)).

This Court's precedents follow a similar approach. In *City of New York v. Amtrak*, 776 F.3d 11 (D.C. Cir. 2015), this Court held that the Special Court had jurisdiction over a dispute over the provision in the 3R Act that provides that rail properties conveyed to Conrail must "be conveyed free and clear of any liens and encumbrances," because interpreting that statute served the purpose of interpreting a conveyance document. *City of New York*, 776 F.3d at 13 (quoting 45 U.S.C. § 743(b)(2)). New York City and Amtrak disputed whether a conveyance order that conveyed rail property from Penn Central to Amtrak had, in implementing the 3R Act, extinguished an obligation under a 1906 agreement between New York City and Penn Central's predecessor. *Id.* at 12–13. The Special Court's task was, as always, to interpret how a conveyance order allocated rights between two parties, which, in that setting, required interpreting the 3R Act. *See also Consol. Rail Corp. v. STB*, 571 F.3d at 18 (quoting *Pittsburgh & Lake Erie*, 459 F. Supp. at 1017) (noting the Special Court's jurisdiction to determine "the nature and extent of the privileges conveyed" in a conveyance order). In that limited circumstance, grounded in the

text of Section 719(e)(2), the Special Court has jurisdiction over questions of statutory interpretation. Elsewhere, as here, it does not.[13]

Strohmeyer cannot leverage cherry-picked quotes into an expansive role for the Special Court to interpret statutes. Again, the text—the most important indicator of statutory meaning—refers to "orders entered by" the Special Court. *Conrail* therefore does not establish that any dispute involving the interpretation of the 3R Act, let alone the Termination Act, is within the Special Court's exclusive jurisdiction.

The Final System Plan was perhaps the most significant event in the history of northeastern railroads. But it was developed a half-century ago. Today, rail lines subject to the Final System Plan give rise to other disputes that do not implicate the Final System Plan or conveyance orders under it. History provides context, but need not be relitigated with each new case.

---

[13] *City of New York* uses language that appears broad at first glance, stating that the Special Court has jurisdiction over "any issue '*relating*' to conveyance orders or agreements entered pursuant to conveyance orders." *City of New York*, 776 F.3d at 13 (emphasis in original) (quoting *Conrail v. United States*, 883 F. Supp. at 1571 n.15). But, in context, the phrase "relating to" was not meant to drastically expand the scope of the Special Court's jurisdiction into disputes that did not turn on the meaning of the Final System Plan or conveyance orders. Instead, it conveys that the interpretation of conveyance orders may implicate subsidiary questions.

## III. STROHMEYER'S PROCEDURAL CHALLENGES ARE MERITLESS.

The City adopts Respondents' arguments regarding Strohmeyer's myriad procedural challenges and will not repeat them. D.C. Cir. R. 28(d)(2). Strohmeyer has forfeited many of his procedural arguments. Others are meritless; Strohmeyer received sufficient process, and was not injured by the Board's procedural choices. The City highlights, however, that Strohmeyer appears to believe that the Board's decision to exclude the Deed from its consideration was a meaningful one. *See* Strohmeyer Br. 47–51.

## CONCLUSION

Strohmeyer's petition for review should be dismissed, or, in the alternative, denied.

RESPECTFULLY SUBMITTED,

/s/ *Charles A. Spitulnik*
Charles A. Spitulnik
KAPLAN KIRSCH LLP
1634 I Street, NW, Suite 300
Washington, DC 20006
(202) 955-5600
cspitulnik@kaplankirsch.com

Grant M. Glovin
KAPLAN KIRSCH LLP
1500 Broadway, Suite 1605
New York, NY 10036
(646) 883-5110
gglovin@kaplankirsch.com

DATED: September 10, 2026

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitations of the Court's July 7, 2026 order because it contains 6242 words, excluding the parts of the brief exempted under D.C. Circuit Rule 32(e)(1), according to the count of Microsoft Word.

/s/ *Charles A. Spitulnik*

Charles A. Spitulnik
KAPLAN KIRSCH LLP
1634 I Street, NW, Suite 300
Washington, DC 20006
(202) 955-5600
cspitulnik@kaplankirsch.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he has caused a true and correct copy of the foregoing document to be served upon all counsel of record via the Court's electronic filing system, and to be served on Petitioner Eric Strohmeyer by email to e.strohmeyer@cnjrail.com and first-class U.S. Mail, postage prepaid, to the following address:

Eric S. Strohmeyer
P.O. Box 4232
Warren, NJ 07059

Dated: September 10, 2026

/s/ *Charles A. Spitulnik*
Charles A. Spitulnik
KAPLAN KIRSCH LLP
1634 I Street, NW, Suite 300
Washington, DC 20006
(202) 955-5600
cspitulnik@kaplankirsch.com